UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2004 JAN 20  P 4: 47



DARNELL TATEM

v.

ERINN DOLAN[1]

PRISONER
Case No. 3:02cv1201(CFD)(WIG)

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Darnell Tatem ("Tatem"), is confined at the State of Connecticut MacDougall/Walker Correctional Institution. He alleges that the defendant Erinn Dolan, a nurse at that facility, was deliberately indifferent to his serious medical need by denying him treatment when he "had something in his eye". Pending is the defendant's motion for summary judgment [Doc. # 20]. For the reasons that follow, the defendant's motion is GRANTED.

**I. Standard of Review**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glens Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted). A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520,

---

[1] Tatem has incorrectly identified the defendant as Arron Dolen.

523 (2d Cir.) (quoting <u>Anderson</u>, 477 U.S. at 248), <u>cert. denied</u>, 506 U.S. 965 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact." <u>Soto v. Meachum</u>, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 12 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." <u>Aldrich</u>, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir.), <u>cert. denied</u>, 502 U.S. 849 (1991). See also <u>Suburban Propane v. Proctor Gas, Inc.</u>, 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See <u>Securities & Exchange Comm'n v. Research Automation Corp.</u>, 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 18 (2d Cir. 1995). See also <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the

2

conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990).

## II. Facts[2]

On April 16, 2002, at approximately 6:00 p.m., Tatem complained to a corrections officer that he had something in his left eye that was causing a burning sensation. The officer called defendant Erinn Dolan, a nurse on duty at the medical unit, and reported Tatem's situation to her. Dolan asked whether Tatem had been in a fight or had anything visibly protruding from his eye. After both questions were answered in the negative, Dolan told the correctional officer to send Tatem to the medical unit at 7:30 p.m. and that she would see him at that time.

While waiting for his appointment in his cell, Tatem tried to look at his eye using a makeshift mirror. He could not see a foreign object, but noted that the eye was pink. Shortly after 7:30 p.m., Tatem reported to the medical unit as instructed, but Dolan did not treat him immediately because she concluded it was not an emergency situation. Tatem then left the medical unit to complain about not being treated immediately. When he then returned to the medical unit, Dolan sent him back to his residential unit and told the correctional staff there that she would see Tatem at 9:30 p.m. From 8:00 to 9:00 p.m., Dolan was busy dispensing evening medications to other inmates, as was previously and typically scheduled.

While Tatem was returning to his cell at approximately 8:00 p.m., another inmate gave him some eyewash. He rinsed his eye upon returning to his cell, removing the irritant. At 9:45 p.m., Dolan called Tatem's housing unit to see why he had not returned to her unit for treatment.

---

[2]The facts are taken from Defendants' Statement of Material Facts Not in Dispute [doc. #21], the affidavit of Erinn Dolan [doc. #24] and the excerpts from Tatem's deposition, Tatem's affidavit [doc. #27] and Tatem's Local Rule 9(c)2 Statement [docs. ## 28, 29].

Because Tatem has not arrived in the medical unit by 9:45 p.m., and all inmates must be in their cells at 10:00 p.m. for headcount, Dolan also told the corrections officer that Tatem should sign up for sick call the next morning if his eye still bothered him. Tatem did not mention any pain in his left eye when he was next seen by medical staff and did not seek medical attention for his left eye after April 16, 2002.

### III. Discussion

Defendant Dolan moves for summary judgment on the basis that there is no genuine issue of material fact on three grounds: (1) she was not deliberately indifferent to Tatem's condition; (2) Tatem did not suffer from a serious medical need; and (3) she is protected by qualified immunity.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "'However, [b]ecause society does not expect that prisoners will have unqualified access to health care,' a prisoner must first make [a] threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

A plaintiff also must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to a serious medical need. Estelle, 429 U.S. at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. See Id. at 104-05.

"The deliberate indifference standard embodies both an objective and a subjective

4

prong." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). A subjective inquiry is also made as to the charged official's culpable state of mind. See Hathaway, 37 F.3d at 66.

The "serious medical need" inquiry is fact-specific and, thus, "must be tailored to the specific circumstances of each case." Smith, 316 F.3d at 185. When considering the seriousness of an inmate's medical need, the court must focus on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care." Id. at 186. The Second Circuit has identified several factors that are highly relevant to this inquiry: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000). The absence of adverse medical effects or demonstrable physical injury may be considered in evaluating the severity of an inmate's medical need. See Smith, 316 F.3d at 187.

Not all medical conditions satisfy this component of the standard. See, e.g., Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994) (symptoms including nausea, shakes,

5

headache and depressed appetite); Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Davidson v. Scully, 914 F. Supp. 1011, 1015 (S.D.N.Y. 1996) (determining that although tinnitus may be painful, it is not an urgent medical need that would support an Eighth Amendment claim); Sonds v. St. Barnabas Hosp. Correctional Health Servs., 151 F. Supp. 2d 308, 311 (S.D.N.Y. 2001) ("cut finger, even where skin is 'ripped off,'... does not, as a matter of law, qualify as an injury severe enough to justify civil rights relief"); Henderson v. Doe, No. 98 Civ. 5011, 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (broken finger); Veloz v. New York, 35 F. Supp. 2d 305, 312 (S.D.N.Y. 1999) (foot condition involving a fracture fragment, bone cyst and degenerative arthritis). Where the inmate's

> complaints, though serious, concern conditions which many people suffer from and function despite on a day-to-day basis[,] ... the fact that a sufferer is incarcerated does not elevate every perceived lack of treatment to the level of cruel and unusual punishment. The state need not treat these conditions at a level that "exceeds what the average reasonable person would expect to avail herself of in life outside prison walls."

Davidson, 914 F. Supp. at 1015 (citation omitted).

As noted above, in addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

6

On the basis of the undisputed facts, Tatem cannot satisfy the objective portion of the deliberate indifference test, that is, he did not suffer from a "serious medical need". Although Tatem had a foreign object in his eye that caused some temporary pain and irritation, it was removed and the pain relieved when he washed out his eye. Tatem also stated in his affidavit that he did not wash out the object before he was provided with the eye wash by the other inmate because the water in his cell caused throat cancer. However, there is no evidence of that, and Tatem could have relieved his problem in that way. He has also not provided any evidence suggesting that a medical professional considered his condition serious and the undisputed facts do not lead to that inference. Finally, Tatem provides no evidence that he suffered any adverse medical effects or permanent injury from this incident. He admitted in his deposition that after the irritant was removed when he used the eye wash, he needed no further medical attention. (See Attachment to Def.'s Mem. at 74.) Thus, Tatem's discomfort lasted two hours. In short, Tatem has provided no objective evidence to show that this incident was any different from the everyday occurrence of eye irritation and pain when a person has a foreign object in his eye. See Lujan, 497 U.S. at 888 (holding that self-serving affidavit repeating conclusory allegations from the complaint is insufficient to preclude summary judgment). This is hardly the situation that calls for protection of inmates under the Eighth Amendment's prohibition against cruel and unusual punishment.

The court concludes that an average reasonable person would not seek or need immediate medical attention but would wash out his eye in this circumstance, and that the irritant did not rise to the level of a serious medical need. Thus, Tatem failed to demonstrate that his medical

7

need was objectively serious and has not met his burden in opposition to the motion for summary judgment[3]. The defendant's motion for summary judgment is granted on this ground.

### IV.    Conclusion

Defendant's Motion for Summary Judgment [**doc. #20**] is **GRANTED**. The Clerk is directed to enter judgment in favor of the defendant and close this case.

**SO ORDERED** in Hartford, Connecticut, this 20th day of January, 2004.

_____
Christopher F. Droney
**United States District Judge**

---

[3] Obviously, the Court need not and does not consider the question of whether Dolan was "deliberately indifferent" to Tatem's medical needs or whether she is entitled to qualified immunity.